UNITED STATES of America, Plaintiff,

v.

Berry A. MAULDIN, Defendant.

No. T–CR–82–40003–01.

United States District Court,
W.D. Arkansas,
Texarkana Division.

Sept. 17, 1982.

W. Asa Hutchinson, U.S. Atty., Fort Smith, Ark., for plaintiff.

Darrell F. Brown, Mays, Crutcher & Brown, P.A., Little Rock, Ark., for defendant.

MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

On June 24, 1982, after a trial by jury, defendant was convicted of five counts of mail fraud and aiding and abetting. Sentencing was scheduled for August 23, 1982, so that a presentence report could be prepared. Trial counsel filed a motion for a new trial on June 29, 1982, alleging that the foreperson had slept through the jury instructions, there was a "distinct possibility" of discussion of the case by jurors with outside parties, the jury had only deliberated a short amount of time, and certain instructions were repetitive and cumulative. After the United States responded to that motion, the Court rejected those allegations and denied the motion for a new trial. Defendant was sentenced on August 23, 1982, to concurrent terms of four months imprisonment in a treatment-type facility with three years supervised probation upon his release on each count, a combined fine of $5,000 and payment of restitution. The payment of restitution, in an amount to be determined by the United States and defense counsel, was to be made by January 1, 1983, the fine was to be paid by October 23, 1982, and the defendant was to voluntarily report to custody by noon on September 27, 1982.

On September 2, 1982, Darrell Brown, Esq. entered his appearance as defense counsel and filed a motion for new trial based on newly discovered evidence, his affidavit in support of that motion, and a motion for a stay of execution of sentence pending appeal and resolution of the new trial motion. The motion for a new trial stated that "upon information and belief a certain juror was not qualified or otherwise competent to serve as a juror in this case." Defendant also asked for an in camera hearing and for the Court to subpoena certain documents and witnesses. Brown's affidavit stated that he could not make further inquiry into the matter without the Court's assistance and that under separate cover he was submitting additional affidavits and names of agencies and other persons in possession of information to assist the Court in ruling on the motion.

By letter dated September 1, 1982, Brown stated that because of the sensitive nature of the allegations he felt it would be best to submit affidavits directly to the Court without filing them. He also added that if an evidentiary hearing was granted, he would need to subpoena Robin Boe who did the actual evaluation of the juror in question, and the records from Llanview, Arkansas.[1] Attached to the letters were two affidavits. Jamie Roe stated in her affidavit that she had been a Mental Health Worker at the General Hospital Mental Clinic in Llanview, Arkansas, and during the tenure of her employment from June of 1980 to April of 1982, Chris Doe was "evaluated for rehabilitation on mental disability." Roe further stated that based "upon information and belief, I am of the opinion that [M_. Chris Doe] was mentally infirm during that time." Terry Hoe stated in her affidavit that she had known Chris Doe for at least one and one-half years and during that time she had "worked with [Chris Doe] at the [Leeward] Workshop in [Llanview], Arkansas." Hoe also stated that from "my personal observations, I believe that [Doe] is mentally infirm and incapable of making mature judgments." Doe was a member of the jury panel that convicted defendant.

On September 7, 1982, the United States filed responses to defendant's motion for a new trial and motion to stay. The United States responded that the newly discovered evidence was in the form of two affidavits from individuals who were not alleged to be trained or licensed psychologists or psychiatrists, stating their opinions that the juror in question was mentally infirm. It continued that those opinions were nothing more than speculation and did not warrant subjecting the juror to the humiliation of a hearing on those allegations.

Since Brown's entry of appearance did not ask that he be substituted as counsel of record, the Court, through its staff, contacted trial counsel to ascertain his status in the case. The Court was advised that trial counsel did not have anything to do with the preparation or filing of the motions, had been told the day after sentencing that new counsel had been retained, and would immediately file the proper pleadings to have his name removed as counsel of record.

After considering the motion, response and applicable law, as contained in *United States v. Allen,* 588 F.2d 1100 (5th Cir.1979) and *United States v. Dioguardi,* 492 F.2d 70 (2nd Cir.1974), the Court found that a preliminary hearing was needed to afford defense counsel with an opportunity to make an offer of proof which would warrant the Court to make further inquiry such as an evidentiary hearing. By order dated September 8, 1982, and filed on September 9, 1982, the Court scheduled such a hearing in camera in Little Rock for September 10, 1982. Due to the shortness of time, counsel were orally informed of the hearing on September 8, 1982.

On September 10, 1982, Brown and Assistant United States Attorney Steve Snyder appeared for the in camera hearing. They stipulated to the matter being heard in the Eastern District of Arkansas and

---

1. Fictitious names are used for places, individuals and institutions in order to protect the identity of the juror involved.

defendant, through his attorney and with notice, waived any right to be present.

Defense counsel made the following proffer: Robin Boe, a counselor at General Hospital Mental Clinic, would testify that he had evaluated Doe; Lynn Poe, a Rehabilitation Counselor, has the file on Doe's full evaluation; Kelly Foe, Director of the Rehabilitation Agency, would be the proper custodian of the pertinent records; Hoe was a close personal friend of Doe; and Roe, trained by the Department of Health and Human Services to be a Mental Health Worker without the need of a degree, had observed records that contained the evaluation that Doe had a personality disorder and needed intensive therapy. Upon inquiry by the Court, defense counsel admitted his investigation had revealed that no insanity or guardianship proceedings had been instituted regarding Doe.

In evaluating the proffered evidence and the request for a new trial, the Court has been guided by, and has relied on, the procedures and rules of law contained in *United States v. Allen, supra;* and *United States v. Dioguardi, supra,* as stated below. The Court first started with the presumption that a juror is competent and sane, especially where a challenge is made only after a verdict has been rendered. The Court next gave defense counsel an opportunity to make an offer of proof by objective evidence, such as proof of an adjudication of insanity or mental incompetence closely in advance of the time of jury service, to determine whether further inquiry should be made. "[A]bsent such substantial if not wholly conclusive evidence of incompetency, courts have been unwilling to subject a juror to a hearing on his mental condition merely on the allegations and opinions of a losing party." *United States v. Dioguari,* 492 F.2d at 80. Defense counsel made the offer of proof as related above, and the Court heard argument on that offer and on the necessity for further inquiry.

▮ The Court finds that there is not any objective evidence in the form of the proffer to warrant an evidentiary hearing on the juror's competency. Defense counsel admitted that there had been no order adjudicating Doe insane although a search of court records had been made. The lack of even guardianship proceedings certainly indicates that Doe is competent to handle personal business affairs. The affidavits submitted on defendant's behalf were made by non-professionals who had not, as defendant conceded, received any training as psychologists or psychiatrists. Hoe was characterized as a good friend with no indication given of the capacity in which she "worked with" Doe at the Leeward Workshop. Roe had received training as a Mental Health Worker, but no showing was made that this training qualified her to make such opinions or that her opinions should be given any more weight than those of a layperson. Further, from the way the affidavit is worded, it appears that Roe's information did not cover any period after April of 1982, which was two months prior to defendant's trial. Defense counsel conceded that, except for the diagnosis as related by Roe, he did not know and could not predict what the witnesses and records that he wanted to subpoena would reveal. To authorize defense counsel to subpoena those persons and records would be to allow him to engage in a fishing expedition.

The Court notes that the jury panel from which defendant's jury was selected has been serving for at least several months on both civil and criminal cases without challenge. At defendant's trial, the Court conducted initial voir dire and then permitted counsel to conduct supplemental voir dire. Throughout the entire trial, which took place over a three day period, the Court observed the demeanor and behavior of the jury and did not observe any inappropriate or bizarre behavior or demeanor on the part of any juror. Further, no such observations were ever communicated to the Court by counsel, staff or jury members. In short, there was never any indication that any juror's competency should or would be questioned until defendant filed the present motion for a new trial. The Court finds that the motion for a new trial based on newly

discovered evidence should be, and it is hereby, denied.

■ Since the Court has ruled on the motion for a new trial, that portion of the motion for a stay pending resolution of the new trial motion is now moot. The remainder of the motion for a stay asks the Court to stay the execution of sentence pending appeal. Defendant states that he will not flee, does not pose a danger to any person or the community and has previously been released upon agreement by the Court, and his presence is necessary in preparing the appeal. He further contends that he satisfies the criteria for release under 18 U.S.C. § 3146 since he has strong family ties in the community, was an elected official for many years, is in need of medical care, has never failed to appear, is not accused of a heinous crime, and is not taking an appeal for the purpose of delay.

The United States opposes any stay. It submits that the stay would merely be delaying the inevitable, that defendant was sentenced to a medical facility, that he was convicted of a serious offense in accepting bribes for the official performance of his elected duties, and that the best interest of the public would be served by defendant serving his sentence as soon as possible.

The Court felt that it was being compassionate when it imposed defendant's sentence. Not only was defendant sentenced to serve only four months imprisonment, but he was given the option of selecting, for the Court's recommendation to the Attorney General, which medical facility he wished to serve his sentence. Furthermore, defendant was granted until October 23, 1982, in which to pay the $5,000 fine and until January 1, 1983, to make restitution in an amount that is estimated to be less than the fine. In light of defendant's financial status, the Court was most generous in setting that payment schedule. The Court agrees that defendant is merely attempting to delay the inevitable by filing the meritless new trial motion and the appeal, and finds that a stay is not warranted.

Accordingly, defendant's motion for an evidentiary hearing is denied, the motion for a new trial based on newly discovered evidence is denied, and the motion for a stay pending resolution of the motion for a new trial and appeal is denied. Moreover, defendant, his attorney, or anyone acting under their direction are prohibited from making further inquiry into the sanity or competency of any juror, from harassing any juror, or from making any other type of investigation without prior approval of the Court. The Court had believed such activities had ceased after the August 23rd hearing on possible violations of Local Rule 26, but it is apparent that the formal guidelines above must be established.

Due to the sensitive nature of the allegations concerning Doe's competency, the Court finds that the September 1, 1982, letter and the Hoe and Roe affidavits, all of which are attached to this opinion, should be filed and placed under seal by the Clerk along with this opinion. Copies of this opinion will only be sent to counsel. However, copies of this opinion, substituting fictitious names and places to eliminate any identification of the juror in question, will be submitted for publication. A separate order is being entered this date which will be filed as a matter of public record. The Court Reporter and Clerk are directed to seal any tapes, notes and transcript made of the September 10th in camera hearing should an appeal be taken. To avoid any needless embarrassment, the Court is persuaded that these procedures must be imposed.

### ORDER

In accordance with the findings announced at the conclusion of the September 10, 1982, preliminary hearing and contained in the sealed opinion and order filed this date, the defendant's motion for an evidentiary hearing is denied, the motion for a new trial based on newly discovered evidence is denied, and the motion for a stay pending appeal is denied. Moreover, defendant, his attorney, or anyone acting under their direction are prohibited from making further inquiry into the sanity or competency of any juror, from harassing any

juror, or from making any other type of investigation without prior approval of the Court.